STATE of Minnesota, Respondent,

v.

**Charles Edward KENNEDY, Appellant.**

No. CX–96–2532.

Court of Appeals of Minnesota.

Dec. 23, 1997.

Review Granted Feb. 19, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by PETERSON, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellant Charles Edward Kennedy appeals his conviction of two counts of attempted criminal sexual conduct in the first degree, arguing that the district court erred in admitting evidence of his alleged subsequent sexual offense against the same victim. We reverse and remand.

## FACTS

Appellant Charles Edward Kennedy was charged with two counts of criminal sexual conduct in the first degree under Minn.Stat. § 609.342, subd. 1(b), (g) (1994), and one count of criminal sexual conduct in the third degree under Minn.Stat. § 609.344, subd. 1(c) (1994). Both charges stem from an allegation that on April 29, 1995, appellant had forcible sexual intercourse with N.G., the teenage daughter of appellant's girlfriend. At the time of the alleged incident, appellant lived with N.G. and her mother.

At trial, N.G. testified that she was babysitting her younger siblings when appellant began touching her sexually and later followed her into her room, where he attempted to have sexual intercourse with her through her clothing, eventually ejaculating on her and her shorts. N.G. also testified that, after appellant left, she removed her shorts and placed them in a pile of dirty laundry.

According to other testimony given at trial, N.G.'s mother later gave the shorts to a neighbor who was to give them to the police. The neighbor took the shorts to his apartment. The neighbor's girlfriend retrieved the unwashed shorts from the laundry basket and gave them to the police approximately a week after the alleged offense.

N.G. also testified that, about six months after the charged offense allegedly occurred, appellant again entered her bedroom, touched her thighs, and told her that he would give her money if she would have sex with him. N.G.'s testimony was the only evidence of this second incident.

The state, pursuant to *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965), gave appellant notice before trial of its intent to introduce evidence of this subsequent incident. The state argued that the evidence was relevant with respect to appellant's intent or a common scheme and plan. The trial court deferred ruling on the state's motion until the end of the state's case-in-chief; the court then admitted the other-conduct evidence, finding that it was critical to the state's case because the DNA evidence from the shorts (and thus the state's entire case against defendant) was weakened by the fact that the shorts were "kicked pillar to post for about five or six days" and the jury might conclude that this "clouds the DNA."

The jury found appellant guilty of two counts of attempted criminal sexual conduct in the first degree under Minn.Stat. § 609.342, subd. 1(b), (g).

## ISSUES

I. Can the victim's testimonial evidence of a separate offense against her, without any corroborating evidence, satisfy the requirement that a *Spreigl* offense be proven by clear and convincing evidence?

II. Did the trial court err by admitting *Spreigl* evidence where the state failed to identify a precise issue on which the *Spreigl* evidence would be held relevant under the Minnesota Rules of Evidence?

III. Did the trial court err by admitting *Spreigl* evidence where the state failed to demonstrate that its evidence against the defendant was weak on an issue so identified?

IV. Did the trial court err by admitting *Spreigl* evidence of conduct that took place six months *after* the charged offense?

## ANALYSIS

"[E]vidence of prior bad acts and previously committed crimes is commonly known as *Spreigl* evidence." *State v. Moorman,* 505 N.W.2d 593, 601 (Minn.1993). The decision to admit evidence of other acts rests within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *State v. Landin,* 472 N.W.2d 854, 859 (Minn.1991).

To admit *Spreigl* evidence, the trial court must find that:

(1) the evidence is clear and convincing that the defendant participated in the *Spreigl* incident; (2) the *Spreigl* evidence is relevant and material to the state's case; and (3) the probative value of the *Spreigl* evidence outweighs its potential for unfair prejudice.

*Id. Spreigl* evidence is admissible only when *all* the factors for admission are met. *State v. DeWald,* 464 N.W.2d 500, 504 (Minn.1991). Where the admissibility of *Spreigl* evidence is unclear, the defendant is to be given the benefit of the doubt and the evidence is to be rejected. *Spreigl,* 272 Minn. at 495, 139 N.W.2d at 172.

### I. Clear and Convincing

One requirement for admission of a *Spreigl* offense is that evidence of the defendant's participation in the other conduct must be clear and convincing. *Landin,* 472 N.W.2d at 859.

The victim of the *Spreigl* incident here alleged was the victim of the charged crime, N.G. The record shows that proof of the *Spreigl* offense consisted entirely of N.G.'s uncorroborated testimony. In the absence of corroborating evidence, there is an inherent danger that the victim may have fabricated the second complaint against the defendant to bolster her own testimony about the charged offense. Testimony about the charged offense must persuade the jury on its own, and evidence designed to bolster that testimony is to be avoided. *See State v. Myers,* 359 N.W.2d 604, 609–10 (Minn.1984) (as general rule, expert testimony regarding truth or falsity of victim-witness's allegations not admissible unless it only indirectly bolsters testimony); *State v. Fitzgerald,* 382 N.W.2d 892, 894–95 (Minn.App.1986) (trial court did not abuse discretion by excluding expert testimony offered only to bolster appellant's credibility), *review denied* (Minn. Apr. 24, 1986).

This case is distinguishable from *State v. Wermerskirchen,* 497 N.W.2d 235 (Minn.

1993). In *Wermerskirchen,* the *Spreigl* evidence consisted of offenses against others, not against the victim of the charged offense, and the testimony was from those other victims. *Id.* at 237. We also find distinguishable *State v. Elvin,* 481 N.W.2d 571 (Minn. App.1992), *review denied* (Minn. Apr. 29, 1992). In *Elvin,* this court affirmed the trial court's decision allowing the victim to testify to two subsequent assaults against her. *Id.* at 575. There had, however, been a conviction in one of those incidents and the evidence of both incidents was offered to prove a violent relationship of some duration. *Id.*

We hold that in this case the evidence of the subsequent offense against the same victim, which consisted solely of the victim's testimony without corroborating evidence, did not satisfy the requirement that *Spreigl* evidence be clear and convincing.

## II. Relevance

### A. Relevance Under Rule 404(b)

■ To be relevant, *Spreigl* evidence must prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b).

The state claimed here that the *Spreigl* evidence was relevant to show "intent" or "common scheme and plan." The state's claim was hollow. First, sexual "intent" is not in dispute; rather, the defense claims there was no incident—neither sexual nor innocent. Second, "common scheme and plan" evidence is commonly used to show identity indirectly by establishing a modus operandi. But identity is not in dispute here; if there was an incident, appellant was the perpetrator. Further, the charged and *Spreigl* incidents were significantly different—without a common scheme or plan.

### B. Relevance To Show Relationship

■ Evidence has also been admitted as *Spreigl* evidence to prove "relationship." [1] *See State v. Henriksen,* 522 N.W.2d 928, 929 (Minn.1994) (in terroristic threat prosecution, evidence of defendant's relationship with victim was admissible to put alleged criminal conduct in context and "help the jury in assessing the defendant's intent and motivation"); *State v. Wiskow,* 501 N.W.2d 657, 660 (Minn.App.1993) (later acts against victim relevant to show an "on-going pattern of appellant's attempts to desensitize [the victim] to sexual abuse"); *Elvin,* 481 N.W.2d at 575 ("[e]vidence of previous domestic violence is admissible to illuminate the relationship between defendant and victim"); *State v. Fischer,* 354 N.W.2d 29, 33 (Minn.App.1984) (evidence of defendant's prior relationship with victims admissible to establish defendant's intent and motive when terroristic threats were made), *review denied* (Minn. Dec. 20, 1984).

The state did not, however, suggest in this case that it offered the evidence to prove an ongoing relationship. The two alleged incidents—the one charged and the one introduced as *Spreigl* evidence—appear on this record to be isolated events, not elements of an ongoing relationship between the accused and the accuser. The *Spreigl* evidence only shows that N.G. could have been twice a victim.

The evidence seems, rather, to have been presented to the jury as "bad character" or "predisposition" evidence. *See* Minn. R. Evid. 404(b) (evidence of another crime inadmissible to prove action in conformity with defendant's character); *State v. Bolte,* 530 N.W.2d 191, 196 (Minn.1995) ("other-crime evidence is not admissible for the purpose of establishing that the defendant is of 'bad character' because he or she committed the prior crime and therefore has a general propensity to commit other crimes"); *Wermerskirchen,* 497 N.W.2d at 239–40 (if only purpose of *Spreigl* evidence is to demonstrate defendant's propensity to commit bad acts, it should be excluded).

Because the *Spreigl* evidence in this case was not offered for a proper purpose, the trial court erred in admitting that evidence.

---

1. Perhaps such evidence may be offered more safely and appropriately as direct evidence of the corpus delicti, rather than being offered—and dubiously justified—as *Spreigl* evidence. In this case, however, the *Spreigl* incident is too distant in time and in detail and of insufficient duration to satisfy as corpus delicti evidence.

### III. Weak-Issue Rule and Prejudice

At trial, appellant argued that the *Spreigl* evidence was unnecessary because DNA evidence made the state's overall case against him strong. Both appellant's argument and the trial court's response to it were misdirected, for strength or weakness of the state's case as a whole is not relevant. Rather, as a condition for the admission of *Spreigl* evidence, the state must show that the proof against a criminal defendant is weak on the precise issue for which the evidence is introduced, not weak in general.

This weak-issue (not weak-case) rule was first articulated in *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967), where *Spreigl* evidence was offered to show identity. The *Billstrom* court held that

> [i]f evidence of other crimes is received for purposes of *identity* * * * [it] is admissible only if the trial court finds the direct or circumstantial evidence of defendant's *identity* is otherwise weak or inadequate, and that [the *Spreigl* evidence] is necessary to support the state's burden of proof. It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment.

*Id.* at 178–79, 149 N.W.2d at 284–85 (emphasis added); *see also State v. Stagg*, 342 N.W.2d 124, 127 (Minn.1984) (for other-crime evidence to be admissible, direct or circumstantial evidence on issue in question must be weak or inadequate).

The weak-issue requirement reflects concern about the prejudice that arises from admission of *Spreigl* evidence. For the state to offer *Spreigl* evidence on an issue where its proof is already strong offends in two ways. First, the *Spreigl* evidence is "piling on" on that issue. Second, and more significantly, it presents to the jury evidence that is redundant, yet inherently prejudicial. *Spreigl* evidence should be admitted only when there is an issue-focused need for such evidence. In all other circumstances unfair prejudice must be presumed.

Under the "weak-issue" rule, if the prosecution's proof of an element of its case is weak, other-conduct evidence offered to support that particular issue can be admitted. But if other-conduct evidence is offered to support an element of the case for which the prosecution already has sufficient proof, that evidence is inadmissible regardless of the **overall** strength or weakness of the state's case. For example, if other-conduct evidence is offered to show opportunity, and the state's proof is strong on the issue of opportunity, the other-conduct evidence will not be admitted, even if the state's proof is weak on all other issues.

By using general terms like "disputed issue" and "state's burden of proof," the supreme court has (I believe unintentionally) eroded the original issue-focused, weak-case requirement articulated in *Billstrom*. For instance, the court has stated that:

> A case may be sufficient to go to the jury and yet the evidence of other offenses may be needed because, as a practical matter, it is not clear that the jury will believe the state's other evidence bearing on the disputed issue.

*Bolte*, 530 N.W.2d at 197 n. 2p; *see also DeWald*, 464 N.W.2d at 504 (state must show that *Spreigl* evidence is "necessary to support the state's burden of proof"); *State v. Slowinski*, 450 N.W.2d 107, 114–15 (Minn. 1990) (in weighing probative value against prejudicial effect, trial court must consider extent to which *Spreigl* evidence is crucial to state's burden of proof). The supreme court has not, however, expressly overruled *Billstrom* on this point.

We hold, therefore, that before *Spreigl* evidence can be admitted, it is critical that the state identify the precise issue on which the *Spreigl* evidence is relevant. The state must then demonstrate that its proof on that issue is weak. It is not enough for the state to assert that its case against the defendant is weak generally and seek admission of other-crimes evidence to bolster an otherwise uncertain prosecution. To hold otherwise denies to the trial court—and defense counsel—an opportunity to properly test the proffered *Spreigl* evidence. Any other holding unfairly

aids the state by allowing admission of *Spreigl* evidence that otherwise would be inadmissible had the state a stronger case. If the case is weak, the system gratuitously aids the state by admitting *Spreigl* evidence. [In any event,] the government gets what it needs and the defendant loses.

*State v. Taylor,* 1997 WL 147434 at *4, No. C4–96–1134 (Minn.App. Apr. 1, 1997) (Harten, J., concurring specially), *review denied* (Minn. June 11, 1997).

In this case, the state did not identify a precise issue on which its proof was relevant—and weak. Admission of the *Spreigl* evidence was improper.

### IV. Timeliness of *Spreigl* Offense

■■■■ Appellant also argues that the *Spreigl* evidence should not be admitted because the offense took place six months after the charged offense.

A trial court should scrutinize *Spreigl* evidence of incidents occurring after the charged offense even more strictly. A jury may be improperly influenced by knowing a defendant has committed a similar act after the charged offense, increasing the inherent danger of prejudice in *Spreigl* evidence.

*Elvin,* 481 N.W.2d at 575. But the principles governing other-offense evidence are the same whether that offense occurs before or after the charged offense. *State v. Lynard,* 294 N.W.2d 322, 323 (Minn.1980). We do not find error based on the subsequent occurrence of the *Spreigl* incident.

### DECISION

The district court erred in admitting the *Spreigl* evidence. Evidence of the *Spreigl* offense, which consisted solely of the victim's bolstering testimony without corroborating evidence, cannot be said to be clear and convincing. The state failed to identify an issue on which the *Spreigl* evidence was relevant and therefore failed to show its proof was weak on such an issue. The state thus failed to overcome the presumption of prejudice that accompanies an offer of *Spreigl* evidence. We reverse and remand for a new trial.

**Reversed and remanded.**